CASE 11—WILL CASE—DECEMBER 15.

# Sarah, &c., vs. Miller, &c.

**APPEAL FROM TRIGG CIRCUIT COURT.**

1. On an appeal from a verdict and judgment of the circuit court, rejecting a paper offered as a will, the court of appeals must, under the statute, pronounce final judgment uninfluenced by the verdict, except where the .testimony might be equiponderant.

2. See the opinion for the facts showing that the paper·in question was a valid will.

M. MAYES, for appellants, cited 13 *B. M.*, 270; 4. *J. J M.*, 537; 1 *Bibb*, 352; 2 *J. J. M.*, 343.

C. D. BRADLEY on same side.

JUDGE ROBERTSON DELIVERED THE OPINION OF THE COURT.

In the year 1854, Jane Miller, an unmarried woman, about sixty-six years old, residing in the family of her brother Josiah, and owning about twenty slaves and a small personalty, published a will, whereby she emancipated her slaves on condition that *all* of them would elect to emigrate to Liberia, bequeathed her personal property to her said brother, and, in the event of any of the slaves declining to go to Liberia, she devised all of them to him 'for life, remainder to his son William and daughter Virginia. In 1855, perceiving the incongruity of the devise of freedom, she added a codicil liberating as many of her slaves as should elect, in a prescribed time, in the county court, to go to Liberia. In the will, as published in 1854, she dedicated the personalty, as bequeathed to Josiah, to the purpose of an outfit, if they should all choose freedom on the condition of emigration.

Dying in 1858, her will was admitted to record in the county court after a regular contest. On an appeal by the contestants to the circuit court, two successive juries having found against it, the court adjudged that it was not a valid will. And this court must now pronounce a final judgment on the testamentary document, uninfluenced by the verdicts, and just as it should had there been no decision on it elsewhere. Under the

statute we must decide as a court of original jurisdiction. Were the testimony equiponderant, we might so far defer to the verdicts as to allow them to preponderate. The Legislature may be presumed to have contemplated this much, but no more, in its peculiar regulations of our jurisdiction in will cases. But there is no such equilibrium in this case. The record leaves this court no judicial doubt or discretion. *It establishes the will.* Assailed only on the ground of alleged incapacity and imputed influence, there is, in our judgment, no solid basis for either charge.

On the subject of capacity, the testimony is, both numerically and morally, overwhelming in favor of a disposing mind. The subscribing witness is minute, clear, and undoubting; her old physician, Doctor Isaac Burnet, testifying that her mind was above mediocrity; the members of her church concurring with the Doctor; the opinion and facts detailed by her brother James; the draftsman as to her minute and considerate dictation of all the testamentary provisions, and the provident and rational character of the provisions themselves; these proofs, all concurrent, and so conclusive of testamentary capacity, are not even weakened by the opposing testimony, none of which expresses even a consistent opinion of incapacity, and all of which proves or admits facts corroborative of the facts and opinions shown in favor of capacity. The character of the assailing testimony by comparatively few witnesses may be illustrated by that of one contesting brother, J. Q. Miller, who said that he never heard his sister, the testatrix, say a foolish thing in her life, and that yet he doubted her capacity to manage her own affairs. The testimony of Alexander and William Miller is substantially of the same character. And there is no stronger evidence of incapacity.

On such facts this court cannot doubt that the testatrix was competent to dispose of her estate, as she did, by will. Nor is there any plausible reason for doubting that the will was the spontaneous offspring of a self-poised mind unbiased by any extraneous influence. The only pretext for contest on this point is the imputed influence of the brother Josiah and his children William and Virginia, with whom the testatrix lived,

and to each of whom she was peculiarly attached, as was rational and natural under all the circumstances. Any other feeling would have been strong evidence of insanity. But, while a few prejudiced witnesses seemed to think that those persons, and especially Josiah, because he managed her business, could have moulded her will, not one of them states any instance of the exercise of any such controlling influence or any fact that would justify that opinion; and the will itself proves that it was either not possessed, or if possessed, not exercised; for, if Josiah or his children could have controlled, and did mould the will, why were all the slaves conditionally emancipated, and all the personalty appropriated to their deportation, whereby an election to go to Liberia, which was almost certain, and has already been made, would deprive them of participation in any portion of the estate of the testatrix? If they could have dictated the will, there can be no doubt that its provisions would have been far more beneficial to themselves. And there is certainly no evidence that the slaves either exercised or had any controlling influence.

Wherefore, we are of the opinion that the contested document, purporting to be the will of Jane Miller, deceased, is her valid last will, and, as such, it is hereby established. And, therefore, the judgment of the circuit court is reversed, and the cause remanded, with instructions to affirm the order of the county court.